United States District Court
Southern District of Texas

**ENTERED**

February 11, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOREATHA WALKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-3872 |
| | § | |
| HARMONY PUBLIC SCHOOLS, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending is Defendant Harmony Public Schools's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Document No. 8). After considering the motion, response, reply, and related filings,[1] the Court concludes as follows.

---

[1] Harmony filed its motion to dismiss together with a separate brief in support addressing sovereign immunity. Document Nos. 8, 9. Walker "objects to the Motion to Dismiss and the Brief violating the Rules and exceed[ing] the page limits without leave from the Court." Document No. 15 at 9. Harmony's separate filing of its 22-page motion and 26-page brief without leave of Court appears to be intended to circumvent the Court's page limits. However, Walker also has filed in connection with Harmony's motion additional filings not authorized by the Rules without leave of Court--an affidavit, additional exhibit, notice, and "Reply to Defendant's Reply"--and the Court denied Harmony's motion to strike the last of these. Document Nos. 10, 12, 14, 15, 17. While the Court disapproves of both parties' excessive filings, it will consider all of the submissions already filed, and Walker's objection is OVERRULED. *See* Document No. 17 at 1 (Order denying Harmony's motion to strike) ("Although Plaintiff should have sought leave of Court before filing a sur-reply, the Court will consider all of the parties' submissions already filed.").

## I. Background

*Pro se* Plaintiff Doreatha Walker was employed from August 2018 until her termination on April 12, 2019 as a fourth and fifth grade science teacher for Defendant Harmony Public Schools ("Harmony"). Walker, who identifies herself as African-American, alleges that she was bullied and harassed by some of her "non-Black co-workers."[2]  Walker filed a grievance with Harmony on February 7, 2019, reporting that she was being bullied.[3]  In early March, she was placed on paid administrative leave during the pending investigation.[4]  Walker alleges that none of her Caucasian and Hispanic co-workers whom she accused of bullying were placed on leave or disciplined during the investigation, even though Area Superintendent Ramazan Coskuner, in his March 18th letter, found in Walker's favor on her February 7 grievance, and stated he "[did] not expect any additional occurrences similar to this incident moving forward."[5]

Later in February, while her February 7th grievance was under investigation, Walker asked the school principal Ms. Morales for permission to produce a parade to celebrate Black History Month,

---

[2] Document No. 3 ¶¶ 9-10 (Pl.'s Am. Compl.).

[3] Id. ¶ 10.

[4] Id.

[5] Id.

evidently sharing what she refers to as her "research" and request with other teachers.  Principal Morales summoned Walker to a meeting with other teachers, asked Walker in a hostile manner why she had shared her research with other teachers, and declined the request to produce a parade, stating there was insufficient time because of testing that was going on.  Based on this, Walker on February 27, 2019 delivered a discrimination complaint against Principal Morales to Area Superintendent Coskuner.[6]

After Walker filed her grievances, Principal Morales and several teachers about whom Walker had complained filed grievances against Walker in retaliation for her filing grievances against them.[7]  As a result, Walker was placed on administrative leave a second time on March 25 so that the grievances against her could be investigated.[8]  Once again, Walker's co-workers of other races about whom she had complained were not put on leave or disciplined.[9]  Walker alleges that she "was extremely anxious, distressed, and depressed about the situation at work" and "requested accommodations for her stress, depression, and anxiety," of which she has a years-long history causing her "substantial

---

[6] <u>Id.</u> ¶¶ 14, 15.

[7] <u>Id.</u> ¶ 16.

[8] <u>Id.</u> ¶ 17.

[9] <u>Id.</u> ¶ 10.

limitations to major activities," but that Harmony failed to accommodate her disability.[10]

On April 3, Walker sent an email to Kelly Hebler, the Supervisor of Employee Relations for Harmony's human resources department, complaining that she was being retaliated against and discriminated against on the basis of her race and did not want to lose her job for reporting discrimination and retaliation.[11]  The next day, Walker submitted a medical certification from her psychologist stating that she needed to be excused from work for six weeks as an accommodation to her disabilities.[12]  Four days later, Walker told some of Harmony's employees that she would return with restrictions, and the psychologist on April 11 submitted amended paperwork reflecting the need for restrictions.[13] Harmony terminated Walker's employment the next day, although Harmony's human resources manager, Mr. Yilmaz, stated that he had decided to terminate Walker on April 2.[14]  Walker's pleading does not identify the reasons given by Harmony for her termination, but she alleges that "[t]he pre-textual reasons given were false, taken from Plaintiff's grievances and emails and turned around on

---

[10] Id. ¶ 18.

[11] Id. ¶ 10.

[12] Id. ¶ 19.

[13] Id.

[14] Id.

Plaintiff" and that Walker in fact was terminated because of her race.[15]

Walker alleges claims against Harmony for (1) race discrimination in violation of 42 U.S.C. § 1981, (2) retaliation in violation of § 1981, (3) race discrimination (including both race-based hostile work environment and discriminatory firing) in violation of Title VII, (4) retaliation in violation of Title VII, (5) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), and (6) retaliation in violation of the ADA, and seeks an award of compensatory and punitive damages and attorney's fees.[16]   Harmony moves to dismiss under Rule 12(b)(1) and (6), arguing that it is entitled to sovereign immunity on Walker's § 1981 and ADA claims in Counts One, Two, Five, and Six, and that Walker has failed to state a claim upon which relief can be granted as to all of her claims.[17]

## II. Legal Standard

Under Rule 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction.   FED. R. CIV. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it.   Ramming v. United States, 281 F.3d

---

[15] Id. ¶ 10.

[16] Id. ¶¶ 22-74.

[17] Document No. 8.

158, 161 (5th Cir. 2001).  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing the attack on the merits.  Id.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009) (quotation marks and citation omitted).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." Collins v. Morgan

_Stanley Dean Witter_, 224 F.3d 496, 498 (5th Cir. 2000).  However, in determining whether the Court has subject matter jurisdiction, the Court is not confined to the pleadings.  _Ambraco, Inc. v. Bossclip B.V._, 570 F.3d 233, 238 (5th Cir. 2009) (under Rule 12(b)(1), the court is permitted to look at evidence in the record beyond facts alleged in the complaint).  The 252 pages of exhibits at Document No. 5, which Walker filed together with her Amended Complaint, are construed as part of the pleadings and therefore may properly be considered as part of the Court's Rule 12(b)(6) analysis.[18]  Walker's later-filed affidavit and additional exhibit, along with the exhibits attached to Harmony's briefs, are not part of the pleadings and may be considered only in connection with Harmony's Rule 12(b)(1) motion.

### III. Discussion

**A.   Sovereign Immunity**

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has

---

[18] In her briefing, Walker repeatedly refers to these exhibits as "evidence" that "proves" her claims.  _E.g._, Document No. 11 at 3, 8, 11-12.  The determination whether a complaint states a claim under Rule 12(b)(6) does not involve the weighing of evidence to determine whether the plaintiff's allegations are true; rather, the Court at this stage assumes that the plaintiff's allegations are true and must determine whether those allegations are sufficient as a matter of law to state a claim upon which relief may be granted.

clearly and validly abrogated the state's sovereign immunity." Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002) (citing U.S. CONST. amend. XI; Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 119 S. Ct. 2219 (1999)). Harmony argues that it is an arm of the State of Texas entitled to sovereign immunity as to Walker's claims under § 1981 and the ADA. See id. ("The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state.") (citation omitted).

Walker in her response brief "conceded her Counts I, III and V that are barred by the Eleventh Amendment" but then, without noting or explaining the discrepancy, agreed to dismiss "Counts I, II and III."[19]  In a subsequent filing, after Harmony noted her concession, Walker stated that she "has decided not to concede Counts III and V, only Count I."[20]  Notwithstanding Walker's later-retracted concession as to Count Three, Harmony has never invoked sovereign immunity as to Walker's Title VII claims in Counts Three and Four, nor could it. See Ussery v. Louisiana, 150 F.3d 431, 434 (5th Cir. 1998) ("Title VII clearly abrogated the States' Eleventh Amendment immunity.") (citations omitted).  As for the remaining claims, because the same sovereign immunity analysis applies to

---

[19] Document No. 11 at 4.

[20] Document No. 14 at 1.

Walker's § 1981 and ADA claims in Counts One, Two, Five, and Six, and Walker has not conceded at least some of these claims, it is unnecessary to determine the scope of her concession or the validity of her partial retraction of that concession.

Congress did not abrogate the states' sovereign immunity under the Eleventh Amendment when it enacted § 1981 or the ADA. *See* Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. Unit A 1981) ("Unlike Title VII, Section 1981 contains no congressional waiver of the state's eleventh amendment immunity."); Perez, 307 F.3d at 326 ("Congress did not abrogate the states' sovereign immunity in enacting Title I of the ADA.") (citing Bd. of Trustees v. Garrett, 121 S. Ct. 955 (2001)). Thus, the Eleventh Amendment bars Walker's § 1981 and ADA claims against Harmony if Harmony is considered an arm of the state. Perez, 307 F.3d at 326.

The Fifth Circuit uses a six-factor test to determine "whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state," such that sovereign immunity protects the defendant. Id. (quoting Earles v. State Bd. of Certified Pub. Accountants, 139 F.3d 1033, 1037 (5th Cir. 1998)). The six factors are: (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity

9

has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.  Id. at 326-27.  No one factor is dispositive, and the entity need not show that all six factors weigh in favor of sovereign immunity, but "the source of an entity's funding a particularly important factor because a principal goal of the Eleventh Amendment is to protect state treasuries."  Id. at 327.

Harmony produces uncontroverted evidence that it is a Texas non-profit corporation that has been granted a contract with the State of Texas to operate an open-enrollment charter school system as part of the Texas public school system; that 86.4% of Harmony's funding for the fiscal year ending June 30, 2020 (approximately $350 million out of $405 million) came from the State of Texas; that Harmony, unlike independent school districts, does not have the power to levy taxes as would an independent school district; and that Harmony serves students in several significant areas of Texas: Austin, Dallas, Fort Worth, Houston, Bryan, Beaumont, El Paso, Lubbock, and Odessa.[21]  The Supreme Court of Texas held last year that "open-enrollment charter schools act as an arm of the State government" such that "open-enrollment charter schools and charter-holders are entitled to governmental immunity."  El Paso Educ. Initiative, Inc. v. Amex Properties, LLC, 602 S.W.3d 521, 529-30 (Tex. 2020).  Under these circumstances, and for reasons

---

[21] Document No. 9-1 (Aff. of Faith Ay).

similar to those the Fifth Circuit in <u>Perez</u> gave in holding that Texas's Regional Education Service Centers are an arm of the State, it appears that Harmony likewise functions as an arm of the State of Texas entitled to sovereign immunity. *See, e.g.*, <u>Perez</u>, 307 F.3d at 328 ("State statutes and case law, then, indicate that the State of Texas views the Education Service Centers as arms of the state."); <u>id.</u> at 328-29 ("[T]he significant financial support the state affords to the Centers suggests that a judgment against a Center would be borne in large part by the state. . . . Notably, unlike local school districts, the Centers do not possess any tax levying or bonding authority that could be used to raise funds. This fact counsels in favor of granting [defendant] immunity.") (internal citation omitted); <u>id.</u> at 331 ("The Centers collect and deliver educational resources throughout the state, not just in one area; the Centers are simply divided into regions for convenience."); *see also* <u>Ferguson v. Nova Acad.</u>, No. 3:17-CV-0366-S-BK, 2018 WL 2303801, at *3 (N.D. Tex. Apr. 24, 2018) (open-enrollment charter school entitled to dismissal of ADA claim because of Eleventh Amendment sovereign immunity), *report and recommendation adopted*, 2018 WL 2301840 (N.D. Tex. May 21, 2018).

Walker does not offer any contrary analysis or dispute that Harmony should be treated as an arm of the State of Texas. Instead, she argues that

> **There are three exceptions to the Eleventh Amendment immunity.**   1) where the state waives immunity by consenting to suit in federal court, 2) where Congress abrogates the state's immunity through valid exercise of its powers and 3) under **Exparte Young, 209 U.S. 123 (1908),** where plaintiff files suit against state officials seeking prospective equitable relief for ongoing violations of Federal Law.[22]

Walker, however, makes no showing that any of these three exceptions applies.  Neither Harmony nor the State of Texas has consented to Walker's suit.  Nor has Congress abrogated the states' sovereign immunity as to claims under § 1981 or the ADA.  Sessions, 648 F.2d at 1069; Perez, 307 F.3d at 326.  Finally, Walker seeks only monetary damages, not prospective equitable relief, so the Ex Parte Young exception does not apply.  *See* NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (claims for retrospective monetary damages fall outside the Ex Parte Young exception).  Accordingly, Harmony is entitled to sovereign immunity on Walker's § 1981 and ADA claims, and those claims are dismissed without prejudice for lack of subject-matter jurisdiction.[23]

---

[22] Document No. 11 at 6 (emphasis in original).  Walker correctly argues that Congress abrogated the states' sovereign immunity as to Title VII.  As noted above, however, Harmony does not rely on sovereign immunity as to Walker's Title VII claims.

[23] Harmony requests dismissal of Walker's claims with prejudice.  "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." Warnock v. Pecos Cty., 88 F.3d 341, 343 (5th Cir. 1996).

B.   <u>Title VII Race Discrimination</u>

In Count Three, Walker alleges that she was subjected to a hostile work environment because of her race, and that Harmony fired her because of her race, in violation of Title VII.[24]  In its motion to dismiss, Harmony does not address Walker's hostile work environment claim based on her race, which therefore remains for further adjudication.  Harmony argues, however, that Walker has not pled a plausible claim for race discrimination as the basis for her termination.

Harmony relies on caselaw from the summary judgment context to argue that Walker has not pled the four elements of a *prima facie* claim for race discrimination under the Supreme Court's <u>McDonnell Douglas</u> burden-shifting framework.[25]  However, the Supreme Court unanimously held that such a showing is not required to survive a Rule 12(b)(6) motion to dismiss.  <u>Swierkiewicz v. Sorema N.A.</u>, 122 S. Ct. 992, 995 (2002) ("This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973).  We hold that an employment discrimination complaint need not include such facts and instead

---

[24]  Document No. 3 ¶¶ 40-49.

[25]  Document No. 8 at 8-12.

must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") (quoting FED. R. CIV. P. 8(a)(2)). Under Swierkiewicz's standard, a plaintiff's pleading "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. at 998 (citation omitted).

Walker alleges that Harmony unfairly disciplined her and placed her on leave because she was African-American, but did not discipline or put on leave non-African-American employees (including a Caucasian, Miss Hoff, a special education teacher who allegedly "violated TEA laws"),[26] whose misconduct Walker brought to Harmony's attention. Whether the non-black faculty were the persons against whom Walker filed grievances, or were the persons who filed grievances against Walker, they were not put on administrative leave. The opposite was true for Walker, she alleges, because of her race. Harmony ultimately fired Walker--an adverse employment action under Title VII--because of her race. Accepting Walker's allegations as true, Walker's Amended Complaint gives Harmony fair notice of the substance of her Title VII race discrimination claim. While the details supporting race discrimination are somewhat skinny in Walker's pleading, and largely depend on disparate treatment of Walker and those of other races preceding her termination, a Rule 12(b)(6) motion "is viewed

---

[26] Document No. 3 ¶ 10.

with disfavor and is rarely granted." <u>Harrington</u>, 563 F.3d at 141,
147. At this early stage, Harmony has not shown that it is
entitled to dismissal of Count Three.

C.   <u>Title VII Retaliation</u>

Walker alleges in Count Four that Harmony fired her in
retaliation for Walker's complaints of racial discrimination by
Principal Morales.[27] "Title VII prohibits retaliation against
employees who engage in protected conduct, such as filing a
complaint of discrimination." <u>Perez</u>, 307 F.3d at 325 (citing 42
U.S.C. § 2000e-3(a)). "To establish a prima facie case of
retaliation, a plaintiff must show that (1) she participated in a
Title VII protected activity, (2) she suffered an adverse
employment action by her employer, and (3) there is a causal
connection between the protected activity and the adverse action."
<u>Stewart v. Mississippi Transp. Comm'n</u>, 586 F.3d 321, 331 (5th Cir.
2009) (citation omitted).[28]

Walker alleges that Harmony terminated her employment nine
days after she complained to the Supervisor of Employee Relations

---

[27] Document No. 3 ¶¶ 50-57.

[28] Walker may not be required fully to make out a *prima facie*
case of retaliation to survive Rule 12(b)(6) dismissal. *Cf.* <u>Raj v.
Louisiana State Univ.</u>, 714 F.3d 322, 331 (5th Cir. 2013) ("[A]
plaintiff need not make out a prima facie case of discrimination in
order to survive a Rule 12(b)(6) motion to dismiss for failure to
state a claim.").

for Harmony's human resources department that she was being bullied, retaliated against, and discriminated against on the basis of her race and that she did not want to lose her job for reporting discrimination and retaliation (and less than two months after Walker made a separate complaint of discrimination in late February).[29]  Harmony does not dispute that Walker's complaints about race discrimination were conduct protected by Title VII or that her termination was an adverse employment action.  "Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation."  Mooney v. Lafayette Cty. Sch. Dist., 538 F. App'x 447, 454 (5th Cir. 2013) (citing Evans v. City of Hous., 246 F.3d 344, 354 (5th Cir. 2001)); *see* Evans, 246 F.3d at 354 (noting that a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes).

Harmony argues that Walker's retaliation claim must be dismissed because "Plaintiff has not alleged facts showing that the individual who made the decision to terminate her employment was aware of her adding discrimination to her grievances."[30]  The caselaw on which Harmony relies requires only that "a plaintiff must allege facts showing the employer was aware of the protected

---

[29] Document No. 3 ¶ 10.

[30] Document No. 8 at 13.

16

activity; otherwise, there can be no causal connection between the protected activity and any adverse employment action taken by the employer." <u>Tapley v. Simplifile, LC</u>, No. 3:19-CV-00227-E, 2020 WL 208817, at *3 (N.D. Tex. Jan. 14, 2020) (citing <u>Watts v. Kroger Co.</u>, 170 F.3d 505, 512 (5th Cir. 1999)).  Harmony cites no authority requiring a Title VII plaintiff at the Rule 12(b)(6) stage to identify in her pleadings a specific individual--rather than the "employer," as Harmony's cases state--who knew of the protected activity and made the employment decision.  *Cf.* <u>Watts</u>, 170 F.3d at 512 (affirming summary judgment on Title VII retaliation claim) ("At the time Kroger allegedly began retaliating against Watts, Kroger did not know Watts had engaged in any protected activity.  The district court correctly held that Kroger could not retaliate against Watts for making sexual harassment complaints, because it did not know she had engaged in protected activity.").  Accordingly, Harmony has not shown that it is entitled to dismissal at this pleading stage of Walker's Title VII retaliation claim in Count Four.

## IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Harmony Public Schools's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Document No. 8) is GRANTED IN PART as follows.  Plaintiff Doreatha Walker's claims in

Counts One, Two, Five, and Six for violations of 42 U.S.C. § 1981 and the Americans with Disabilities Act are DISMISSED without prejudice for want of subject matter jurisdiction, based on Defendant's sovereign immunity under the Eleventh Amendment. Defendant's motion is otherwise DENIED, and Plaintiff's Title VII claims in Counts Three and Four remain for further adjudication.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED in Houston, Texas, on this 11th day of February, 2021.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE